**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

DESTIN ODELL FOWLER                                                                                              PLAINTIFF

v.                                                    No. 5:12CV00424 JLH

CAROLYN COLVIN, Acting Commissioner,
Social Security Administration                                                                               DEFENDANT

**OPINION AND ORDER**

On February 17, 2010, Destin Odell Fowler applied for supplemental security income and alleged disability beginning January 27, 2010. Tr. 146. He identified no triggering event for the onset of disability, but his onset date corresponds to his rehab for marijuana and alcohol addiction. Tr. 299-317. After his application was denied, Fowler obtained legal representation. Tr. 63, 64. He learned that he might qualify for additional benefits based on his father's death, applied for childhood disability benefits, and changed his onset date to February 17, 2009, to conform to the rules for childhood disability benefits. Tr. 150-51, 157. *See* 20 C.F.R. § 404.350(a)(5) ("You are entitled to child's benefits on the earnings record of an insured person … who has died if — (1) You are the insured person's child [and] you are 18 years old or older and have a disability that began before you became 22 years old . . . .").

After the Commissioner denied the applications, Tr. 67, Fowler sought a hearing before an ALJ, Tr. 70. On March 29, 2011, an ALJ held a hearing; on April 15, 2011, the ALJ issued an unfavorable decision, concluding that Fowler is not disabled under the Social Security Act. Tr. 16, 29. Fowler asked the Commissioner's Appeals Council to review the decision and argued that he is disabled due to mental retardation. Tr. 10, 263. The Appeals Council denied review. Tr. 1. The

ALJ's decision became the Commissioner's final decision for the purpose of judicial review. *Id*. Fowler commenced this action on November 8, 2012, to seek judicial review.

**Scope of judicial review**. When reviewing a decision denying an application for disability benefits, the Court must determine whether substantial evidence supports the decision and whether the Commissioner made a legal error. *See* 42 U.S.C. § 405(g) (requiring court to determine whether Commissioner's findings are supported by substantial evidence and whether Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled."). Substantial evidence is more than a mere scintilla of evidence; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In determining whether substantial evidence supports the Commissioner's decision, the Court must consider evidence detracting from the decision as well as evidence supporting the decision, but the Court may not reverse the decision simply because substantial evidence supports a contrary decision. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

**The disability-determination process**. The Commissioner's regulations set forth a five-step process for evaluating disability claims. *See* 20 C.F.R. § 404.1520.

> In step one, the ALJ decides whether the claimant is currently engaging in substantial gainful activity; if the claimant is working, he is not eligible for disability insurance benefits. In step two, the ALJ determines whether the claimant is suffering from a severe impairment. If the claimant is not suffering a severe impairment, he is not eligible for disability insurance benefits. At the third step, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in Appendix 1 of the regulations (the "listings"). If the claimant's impairment meets or equals one

> of the listed impairments, he is entitled to benefits; if not, the ALJ proceeds to step four. At step four, the ALJ determines whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. If the claimant remains able to perform that past relevant work, he is not entitled to disability insurance benefits. If he is not capable of performing past relevant work, the ALJ proceeds to step five and considers whether there exist work opportunities in the national economy that the claimant can perform given his or her medical impairments, age, education, past work experience, and RFC. If the Commissioner demonstrates that such work exists, the claimant is not entitled to disability insurance benefits.

*McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (internal citations omitted). The claimant bears the burden of proving disability. If he shows he cannot do his past relevant work, the Commissioner must show work exists that the claimant can do. *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992).

**Fowler's work and medical history**. Fowler applied for disability benefits at age 22. He maintains he has never held a full-time job on a sustained basis. He reported that he stopped working on February 20, 2007, due to his condition, Tr. 169, 171, 183, but he actually works part-time for his grandfather's plumbing business, Tr. 334, 336, 385-86, 408. His earnings are unreported because he receives cash. Tr. 386. *See id*. at p. 315 (reporting earnings of $1200 in the month prior to applying for disability benefits).

Fowler has no significant medical history. He claims chronic left knee pain from a high school injury. The record includes no treatment record for a knee injury. School officials tested Fowler's intelligence throughout his schooling. Fowler's scores are consistent with borderline intellectual functioning.

Fowler alleges worsening depression and anxiety since age 19, when his father died. Tr. 329, 336, 349-50. Initially, he claimed he cannot work due to chronic knee pain, asthma, major depressive disorder, anxiety disorder, attention deficit hyperactivity disorder, and borderline intellectual

3

functioning. Tr. 169. He insists he cannot function amongst unfamiliar people. Tr. 219. Before the Appeals Council, he relied on mental retardation.

**The Commissioner's decision**. At step one of the disability-determination process, the ALJ determined Fowler has done no substantial gainful activity since February 17, 2009. Tr. 18. At step two, the ALJ determined Fowler's ability to work is impaired by the left knee, depression, anxiety, attention deficit hyperactivity disorder, and borderline intellectual functioning. Tr. 18. At step three, the ALJ found Fowler does not meet the severity requirements for a listed impairment. Tr. 23. At step four, the ALJ determined Fowler can do medium work that involves short, simple instructions, occasional contact with the public, and occasional coworker or supervisor interaction. The ALJ excluded assembly line work and forced-pace work. Tr. 24. Because a vocational expert identified available work, Tr. 28, 49-50, the ALJ determined work exists that Fowler can do and concluded that Fowler is not disabled under the Social Security Act. Tr. 28. The Appeals Council declined to review his claim of mental retardation.

**Fowler's allegations of error**. Fowler maintains the Commissioner's determination that he does not meet listing 12.05C is unsupported by substantial evidence. Listing 12.05C is one of the ways of proving disability based on mental retardation. He did not raise the issue of mental retardation before the ALJ, but faults the ALJ for not considering listing 12.05C. Because his earliest IQ scores support mental retardation, Fowler maintains the ALJ should have reconciled his various IQ scores. He also contends the Appeals Council should have considered his most recent IQ scores for medical equivalence.

At step three of the disability-determination process, the ALJ compares the claimant's severe impairments with impairments in the Commissioner's regulations. 20 C.F.R. § 416.920(a)(4)(iii).

4

If the claimant has an impairment that meets or medically equals a listed impairment, the ALJ will find the claimant is disabled. One of the requirements of listing 12.05C is a "valid verbal, performance, or full scale IQ of 60 through 70…." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C (2011). The requirement refers to the Wechsler Intelligence Scales in which "Verbal and Performance IQ scores are added together and are then converted to an overall Full Scale IQ score." 2 William Arthur Atkins, The Gale Encyclopedia of Mental Health 1648 (3d ed.).

At the time of the ALJ's decision, the record included four sets Wechsler IQ scores:

|             | age 7  | age 10 | age 13 | age 23 |
|-------------|--------|--------|--------|--------|
| verbal      | 75     | 81     | 81     | 83     |
| performance | **68** | 81     | 74     | 79     |
| full scale  | **69** | 79     | 76     | 79     |

Tr. 415, 426, 441, 352. Only the first set of scores — at age 7— includes a score between 60 and 70; subsequent score sets do not. The subsequent scores are consistent with borderline intellectual functioning, not mental retardation. The consistency is highly probative of Fowler's claim because "a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning." *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001). The consistency of the subsequent score sets — all indicating borderline intellectual functioning — implicated no need for score reconciliation or consideration of mental retardation because intellectual functioning remained unchanged.

The record also included IQ scores at age 17. Those scores flowed from a newer, less time-consuming method — the Reynolds Intellectual Assessment Scales. Fowler's composite intelligence index was 85; this score placed his IQ as "below average." Tr. 461. The score is significant because

5

mental retardation refers to "significantly subaverage general intellectual functioning." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (2011). "Below average" intellectual functioning does not suggest "significantly subaverage general intellectual functioning." Like the Wechsler scores, the Reynolds scores implicated no need for score reconciliation or consideration of mental retardation. The ALJ did not err in considering the IQ scores or the listings.

Fowler seeks to overcome the presumption of a stable IQ with new evidence in the form of IQ testing at age 24. On testing done the day before the ALJ issued the unfavorable decision, Fowler's performance and full scale scores fell between 60 and 70. Tr. 477. Fowler submitted the new scores to the Appeals Council as new evidence.

"Under [the Commissioner's regulations], if a claimant files additional medical evidence with a request for review prior to the date of the [Commissioner's] final decision, the Appeals Council MUST consider the additional evidence if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990). The age 24 score set is evidence that is new, relevant, and relates to the period on or before the date of the ALJ's decision — new, because the ALJ did not have the scores at the time of the unfavorable decision; relevant, because the scores address Fowler's intellectual functioning; and relates to the relevant time period, because Fowler was tested on the day before the ALJ's decision.

The record shows the Appeals Council considered the scores because the Appeals Council acknowledged receiving the additional evidence, added the additional evidence to the record, stated that it considered the additional information, Tr. 1, reported that the new evidence did not provide a basis for changing the ALJ's decision, Tr. 2, and referred to the new evidence in an attachment to

6

its order, Tr. 4-5. By doing so, the Appeals Council complied with the Commissioner's regulations. *Accord Smith v. Astrue*, No. 5:11-CV-160-JLH, 2012 WL 2232264, at * 5 (E.D. Ark. June 15, 2012); *Baker v. Astrue*, No. 5:10-CV-194-SWW, 2011 WL 4434530, at *2 (E.D. Ark. Sept. 23, 2011). "Where, as here, the Appeals Council considers new evidence but denies review, [the issue is] whether the ALJ's decision was supported by substantial evidence on the record as a whole, including the new evidence." *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007). The ALJ's decision in this case is supported by substantial evidence on the record as a whole, including the new evidence, because the scores provide no basis for questioning the ALJ's determination.

In addition to an IQ score between 60 and 70, meeting a mental retardation listing requires evidence of "deficits in adaptive functioning initially manifested during the developmental period; *i.e.* the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. pt 404 subpt f, app 1, § 12.05 (2011). No evidence demonstrates or supports onset of the impairment before age 22. Instead, the IQ scores at ages 10, 13, 17, and 23 demonstrate and support borderline intellectual functioning during the developmental period. In diagnosing mental retardation, diagnosticians look for evidence of significant limitations occurring before age 18 in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, Text Revision, 41 (4th ed.). By his own admission, Fowler's symptoms began after he turned 18.

To the extent Fowler has deficits in adaptive functioning, those deficits flowed from the death of his father. Fowler reported the onset of symptoms beginning around September 2007 (age 20). Tr. 336. According to Fowler, he began experiencing extreme anxiety and mild depression after his

father's death.  Tr. 336.  He explained that his anxiety worsened to the point that he does not want to leave home.  Tr. 349-50.  He complained about anxiety, panic attacks, lack of motivation, feelings of hopelessness, memory problems, social phobia, depression, and an inability to focus, concentrate, and interact with unfamiliar people.  Tr. 319, 321, 329, 334, 349, 386.  These deficits are not the kind described for a developmental disorder like mental retardation.  20 C.F.R. pt. 404, subpt. P, app. 1, § 112.00 (2011).  Fowler's symptoms are consistent with major, depressive disorder, anxiety disorder, and attention deficit hyperactivity disorder.

Moreover, IQ scores must be valid to satisfy listing 12.05C.  The Appeals Council could properly reject the age 24 scores as invalid.  The age 24 scores — obtained only 10 months and 21 days after the age 23 scores — were significantly lower than the age 23 scores:

|             | 5/24/2010 age 23 | 4/14/2011 age 24 | change in scores |
|-------------|------------------|------------------|------------------|
| verbal      | 83               | 72               | -11              |
| performance | 79               | 64               | -15              |
| full scale  | 79               | 66               | -13              |

Without evidence of an intervening event to explain the drop in scores, the age 24 scores do not rebut the presumption of stable IQ — here, borderline intellectual functioning.  A reasonable mind would accept the evidence — especially the IQ scores at ages 10, 13, 17, and 23 — as adequate to support the determination that Fowler is impaired by borderline intellectual functioning, not mental retardation.  The Appeals Council did not err in the consideration of new evidence.

## CONCLUSION

Having determined that substantial evidence supports the denial of Fowler's application, and the Commissioner made no legal error, the Court denies Fowler's request for relief and affirms the Commissioner's decision.

IT IS SO ORDERED this 19th day of February, 2014.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE